Barber v. Bryant May it please the Court. A preliminary injunction cannot issue unless a litigant makes a clear showing that he will likely succeed on the merits. The plaintiffs in this case have failed to make a clear showing of Article III standing, and more importantly, they have failed to make a clear showing that Mississippi's conscience protection law is unconstitutional. For both of these reasons, the preliminary injunction should be vacated, and this Court should specifically hold that the constitutional challenges to Mississippi's law are without merit. There is no obstacle to this Court reaching the merits of the constitutional claims, even if it were to conclude that the plaintiffs have failed to make a clear showing of Article III standing, because this case comes to the Court on appeal from a preliminary injunction, and the Article III inquiry is limited to whether the plaintiffs have made a preliminary showing based on the pleadings and the factual record, as they currently exist, of whether they've made a clear showing of Article III standing. There's no obstacle to this Court going on to reach the merits if it makes the tentative preliminary conclusion that at this time there is no clear showing of Article III standing. If they don't have standing, that deprives the Court of subject-matter jurisdiction, and then we call the responsible to vacate and dismiss the case. It's not to say, oh, well, if they did have standing, here's what we think. That's correct. Judge Haynes, that's correct. If there is a final and conclusive determination that the plaintiffs lack Article III standing, the only proper response is to announce that fact and dismiss the cause for lack of subject-matter jurisdiction. That is right. Under no circumstance can a court that lacks subject-matter jurisdiction rule on the merits or enter judgment on the merits. But this case is coming to the Court on appeal from a preliminary injunction. It's a cursory, abbreviated record, and the only question to resolve at this time in the litigation is whether a clear showing of Article III standing has been made based on the current state of the pleadings and the current state of this preliminary injunction record, which is pre-discovery. A ruling that the plaintiffs have failed to make the clear showing needed for a preliminary injunction is not a final and conclusive determination that they lack Article III standing, because it's possible. The problem with this conclusive thing that you keep saying is, for example, on equal protection, we might say, hey, on a facial challenge, under the board case, et cetera, you haven't shown standing. However, it could be down the road that somebody's denied of service because of somebody's Section 2 belief, et cetera, et cetera, and then has suffered a concrete and particularized injury, and then can file a new lawsuit. And there would be no risk to your conduct of a finding that the facial challenge lacks standing. Is that fair? That's right. If you think conclusive, you don't mean to say that forever and ever, till death do us part, do we say that somebody would never be able to establish standing, say, for example, on equal protection. It's simply that, at this point, they have done so. Right. Article III standing is a factual question. It's a question of fact. Is there an injury in fact? Have they shown causation? Have they shown redressability? That requires not only factual allocations in the complaint, but it will require evidence obtained through discovery to see whether any one of these plaintiffs, or perhaps new plaintiffs they might add later to this litigation, could establish the requisite evidence of Article III standing. This, though, is at a preliminary stage. Do you have any examples where we have done what you would be seeking us to do, to say preliminarily the Article III standing is not met, and also preliminarily they've not shown the likelihood of success? Is there an example of such a case? I have not found an example from this Court of this Court doing such a thing. But there are many examples of this Court and other courts issuing alternate holdings. There's nothing at all improper about that. A court can say you lose for one of two reasons, each of which standing alone is sufficient, but we will use both of these reasons to justify. There's a lot of case law that says you can't assume jurisdiction. That's correct, you can't. So there's three or four different attacks on jurisdiction, bribements, movements, it's a pure state law question that you don't have those, whatever. So on and on and on, there might be a number of different avenues to say that you lack jurisdiction, and then we can pick one of those and an alternate one of those. But once there's a conclusion that we lack jurisdiction, we can't go, but if we had jurisdiction, in the alternative, we'd say they also didn't meet this event. All that's correct. I'm not understanding why you're making this argument. No, all that's correct, Judge Gaines. This Court's jurisdiction is secure under 1291. The district court entered an injunction, we appeal. This Court has appellate jurisdiction under 1291 to review the entire district court order, both with respect to the standing analysis and the merits. Whether the district court has subject matter jurisdiction will depend on whether the plaintiffs can establish Article III standing on remand if they can allege and prove injury, causation, and redressability. They have not made a clear showing at this point to warrant a preliminary injunction. That does not necessarily mean that they will be unable to do that later, and it does not necessarily mean that the district court must immediately dismiss the case for lack of subject matter jurisdiction. There still is jurisdiction in the district court to determine whether it has jurisdiction, and Article III standing is ultimately a factual question. With respect to the merits of the constitutional claim, by contrast, that's a pure question of law. There's no need for further factual development to determine that the Establishment Clause and Equal Protection Clause claims lack merit. You are saying, and I'm not indicating whether I agree or don't agree, but you're saying that we would, in fact, under that scenario, be able to issue a binding ruling on the merits if we were so inclined. That's correct. A ruling that would be as binding as though we were on a merits appeal rather than an injunction appeal. That's correct. Now, the only circumstance in which you would be unable to do so would be if this court were to conclude that the plaintiffs absolutely cannot, under any circumstance, establish Article III standing, perhaps because they pleaded themselves out of court in the complaint. Now, we're not arguing that they've pleaded themselves out of court. The complaint does not contain sufficient allegations of Article III standing, but that's not necessarily something that warrants immediate and permanent dismissal. If a complaint lacks sufficient factual allegations, the normal remedy is a motion for a more definite statement under 12e, not for the district court to throw them out for failing to put the facts in the complaint. The question on remand will be whether the plaintiffs can adequately plead sufficient facts to establish Article III standing consistent with their Rule 11 obligations. So based on what you've said, and speaking, of course, as an officer of the court, but also on behalf of your clients, summarize for us in a sentence or two, fill in the blanks later, what it is that you request this court to do on this appeal from an injunction. We're asking the court to vacate the preliminary injunction. But start with the standing and then get to the merits. Again, in one or two or three sentences. We're asking the court to hold the plaintiffs failed to make a clear showing of Article III standing that's needed to warrant a preliminary injunction. And that in the alternative, the plaintiffs also failed to make a clear showing that Mississippi's conscience protection law is unconstitutional. And for both of these reasons, each standing alone, the district court's preliminary injunction order was unlawful and must be vacated. What you just told us, thank you for answering my question, you did so directly. But it sounds as to the second half as though it's different from what you told us a few minutes ago in terms of having a definitive ruling on the merits. You're not asking for a definitive ruling on merits such as the example that you gave if the plaintiffs had pled themselves out of court. I believe that is a definitive ruling because this is a legal deficiency with the plaintiff's argument as opposed to Article III standing, which is a factual question. And at this point, there are not sufficient facts in the preliminary injunction record to warrant a clear showing. The plaintiff's arguments on the merits based on the Establishment Clause and Equal Protection Clause should be rejected definitively by this Court. That also means, obviously, they failed to make a clear showing. And not to make a pun, since cases are involved here, but aren't you having your case in EDQ because you're kind of saying we lack jurisdiction, but we should say, and also, by the way, we don't like your argument. We're not saying the Court lacks jurisdiction, Judge Haynes. This Court has – Well, that is a lack of standing, Counselor. I understand you're trying to put it in that you didn't definitively prove, but your whole brief, at least as part of the standing, is that you have to prove standing to recover, and they failed to do that. And so to me, we're past the notion of just looking at the face of the pleading, but you also think on the face of the pleading they didn't insert standing. That's correct. And so we don't go around going, well, maybe someday you'll prove standing. If you do, you come back and file another lawsuit. That's why I asked about the ratio of cause. Why isn't it, if we say, you know what, we haven't proved standing, we mediate and dismiss, and then down the road the plaintiffs think they now have a more clear case of standing, they file that into a ratio of cause and effect of the prior case because we lack jurisdiction. Why isn't that the right outcome? If they have conclusively failed to establish standing after discovery and after factual development of the record, then the case must be dismissed on jurisdictional grounds. That's correct. But right now we're at the preliminary injunction stage. The question is whether they made a clear showing in the district court based on the record of Article III standing. Okay, let me answer this because I think Judge Arnott asked this, but I want to be sure I'm clear. You don't have a case that has a sort of standing approach. No. Well, there is standing, but maybe someday you can establish it Judge Haynes, that's not what we're arguing. Steel Co, the Supreme Court decision in 1998, is very clear that a court cannot decide the merits of a case based on hypothetical standing. It cannot be assumed. We are not in any way questioning Steel Co, and we want to make clear to this court that no court, this court, the district court, no federal court is permitted to rule on the merits if there is a lack of Article III standing. That is a jurisdictional prerequisite. The challenge in this case is that the standing inquiry is a fact-bound question. They have failed at this point of the proceedings to allege sufficient facts in their complaint and to put sufficient facts in the preliminary injunction record that could warrant a preliminary injunction. But we are still early in this case. We have not even yet moved to dismiss under 12b-6 or even 12b-1 in the district court. And the district court still has jurisdiction going forward to determine its own jurisdiction and find out whether the plaintiffs will be able to produce the necessary factual evidence and the necessary pleadings in their complaint to establish Article III standing. Nothing precludes this court from reaching the merits in that scenario. We are not asking this court to assume jurisdiction. I'm not going to ask you about the merits of the standing argument because I think I've heard what you have to say about the procedure and I find it a little odd, but it's fine. We still need to discuss whether there is standing. However, whatever happens is a result of that. So let me ask you what I'll call the merits of the standing question. As I understand it, you're saying that there's nothing here that allows them to make an establishment clause claim because they haven't been impacted in any way by any establishment clause alleged violation. Let me ask you this. What if Section 2, instead of reading that one of the perspectives believes that marriage is or should be recognized as a union of one man and one woman, instead it read, and this is a hypothetical, I understand, but instead it read marriage is or should be recognized as a union of one man and one woman of the same race. This is a hypothetical, I'm not at all advocating that as a section. If it said that, would that change the standing analysis at all? No, it would not. You would still need a plaintiff with Article III injury, and a plaintiff would have to show that he is in imminent, impending, certainly impending, or a substantial risk of suffering some personal and concrete harm on account of that statute. Now, would they be able to find a plaintiff? It's quite likely they would. But nothing would change on the standing inquiry. For establishment, I'm not so much for protection, I think you would understand that, but on the establishment clause, what is the particular harm that, say, an African-American man who wants to marry an Asian woman, what particular harm, under my hypothetical, or even let's back up and put the statute as is, a man wants to marry another man, what is the concrete and particular injury that would have to show for the establishment clause? Well, first they would have to show they're about to get married. And none of the plaintiffs in this case except Renick Taylor even alleges that he's about to get married. And then they would have to show that they're going to get married in Mississippi and that they are at substantial risk of having services denied from someone whom they're planning to ask to provide them. What about the establishment? Well, either way, they still need to show injury in fact. And the injury needs to be personal and concrete. It needs to be certainly impending. There needs to be a substantial risk that something will happen to them beyond mere offense taken at the statute. So what they would need to find in your hypothetical, Your Honor, is the same showing they need to make with respect to this case. They need to find a plaintiff who is planning a wedding and who is showing a substantial risk that someone will deny him services on account of this law. They would then have to show that the law is causing that denial of services and that it could be redressed with a favorable ruling from this court. So you see no difference between equal protection standing and establishment cost standing contrary to the Moore case that just came out? There may be a difference in the type of injuries that can qualify as injury in fact under Article III. For example, there's taxpayer standing that's acceptable in the establishment cost context that is not accepted as an injury anywhere else. We certainly accept that proposition. But there's no scenario in which the plaintiffs in this case have shown an Article III injury for either equal protection or establishment cost purposes. And the inquiry with respect to standing would not change under Your Honor's hypothetical. Of course, the merits would change, and we say that in our brief. We're very clear. A statute such as the one that Your Honor has described would trigger strict scrutiny under the equal protection clause and could not survive that standard. So we are not in any way suggesting that Your Honor's hypothetical statute is constitutional and it would be enjoined if there was a plaintiff standing. But the standing analysis would be the same. The standing analysis would be the same. That's right. There still needs to be a plaintiff with an Article III injury caused by the statute. And does it have to have an Article III injury, or you have to have a plaintiff for each section of the statute, right? Well, it could be a plaintiff challenging multiple sections. Right, or multiple sections. But they have to be seeking to be a foster parent and also seek to be, I mean, there are multiple sections, but we analyze them each separately. That's correct. I mean, the statute is several, so there would need to be a plaintiff who was injured by the discrete section of the statute that the plaintiffs are seeking to enjoin. Now, they do have one plaintiff in the case who was alleging an imminent wedding, and that's Rennick Taylor. But as far as we know, there's no one in this case who was a foster child who could possibly be affected by Section 2 or Section 3 of the statute in any way beyond an ideological injury. Is it your position that on the wedding part of the statute that they not only have to allege an imminent wedding in Mississippi, but that they also have to say that they sought some services to rent a hall or to get a photographer or something? I wouldn't quite go that far. I think it's enough if they can plead that they are going to seek those services from a person who they expect to deny them those services because this law exists. So it doesn't have to be that they've already gone through the trouble of asking and being denied, but at the very least they need to show that they're getting married and getting married in Mississippi. Rennick Taylor does not even allege in the pleadings or in his own declaration that he's planning to get married in the state of Mississippi. We have no idea where his wedding is going to be. Could you take us through just broadly what constitutes the preliminary injunction record in this case? We have many preliminary injunction cases in this circuit. What type of record was made here? We have the pleadings. We have a series of declarations from the barber plants that begin on page 231 of the barber record. Most of those declarations talk about offense as the injury. Actually, the declarations start on page 207. Rennick Taylor's specific declaration starts on page 231. There is a lengthy preliminary injunction hearing that starts on page 1077 of the CSE record, and there are some witnesses who testify. A few of the plaintiffs testify, but most of the witnesses are expert witnesses put forth by the plaintiffs. So those are the main components of the record. We have a series of declarations from the plaintiffs themselves. We had a lengthy hearing in front of Judge Reeves, and that's the evidence that this Court currently has to go on. No depositions yet, no interrogatories, no discovery of that sort. So within that universe, it's your position that no one says they're getting married in Mississippi? As far as I know, the entire universe has all the records, not just the pleadings. I've read the record many times. I have not seen anyone other than Rennick Taylor who's alleging that he is getting married, and he does not even allege that he's getting married in the state of Mississippi. So we need a lot more detail than that before any court can conclude that there's a clear showing of standing to challenge Section 3.5, which is the one subsection of the statute that deals with wedding-related services. There are all sorts of other provisions where the case for standing is even weaker. For example, Section 3.4 of the statute deals with certain services like fertility services and counseling and sex change operations, and no plaintiff in this case is alleging that they're seeking fertility services or sex change operations from anyone, let alone from someone who might deny them those services on account of this Mississippi statute. Let's get to the question of stigma, which you have called stigma, which, in other words, can be used, and you've alluded to it. So the hypothetical, I think, was mentioned in the briefing, so I'll explore it. I mean, suppose that Mississippi passed a statute that said the official religion of Mississippi is Southern Baptist. Are you saying that no one would have standing under that statute? Well, they would still have to show an Article III injury, and they would be suing an officer of the state, presumably, who is in charge with enforcing that statute. If the statute says nothing more than the official religion is Southern Baptist, there needs to be some duty for an executive official to carry out. It would obviously violate the plain language of the First Amendment. Yes, it would. But standing would be a complicated question there, Judge Smith, because first, under Ex Parte Young, a plaintiff can only sue a state officer who is carrying out an executive duty or some administrative duty with respect to that law. And the way Your Honor has described the statute, it appears to be nothing more than a declaratory statement. Now, if there's a tax that's being imposed to fund the Southern Baptist Church, clearly they would be standing to enjoin that tax under the Supreme Court's Taxpayer Standing Doctrine. If there is some public display of a religious symbol due to this statute's endorsement or establishment of the Southern Baptist religion, yes, they would be standing to enjoin that public display of a symbol by someone who regularly or at least one time encounters that symbol in his daily life. But without more detail, without knowing more about just exactly how this statute is implemented, I don't think I can give a candid answer to Your Honor's question because a statute that does nothing more than make a statement but doesn't charge any state official with the duty of enforcement is not going to be able to produce a federal lawsuit under Ex Parte Young. Even though a statement can be stigmatizing as a practical matter. That's right. You're saying that that would never be enough here given that simple hypothetical. I don't believe causation or addressability could be established even independent of the stigma injured because federal courts can't order a statute to be repealed. All they can do is enjoin state officials from enforcing a statute that's on the books. There's no writ of erasure that gives the federal court the authority to order a legislature to repeal a statute or instruct a state officer to erase a statute from the statutory books. So that statute will remain no matter what a federal court does. What only can be enjoined is some action of a state officer enforcing that law. Back to your—we departed from the thorough discussion that we had at the beginning of your argument about what I'll call tentative standing, which I've never heard anything like that. Judge Elrod and I were on the Texas v. United States case, which was also at the preliminary injunction stage, and nobody even remotely brought up the possibility that we could consider anything other than standing as a binary choice, not something that's tentative. So in federal court, when a party pleads, he or she pleads the best case that he or she has in terms of what that plaintiff hopes to prove after discovery if discovery is needed. Now here the pleadings are the pleadings, and you're telling us that there's nothing in those pleadings, read in the light most favorable to the plaintiffs, that can be construed as establishing standing. So I don't quite understand how it is that you say that lack of standing could be cured by discovery if it hasn't been pledged. I mean, there would be no need for discovery if the pleadings are already being construed as widely as the plaintiffs have pledged them. The Supreme Court's rulings in this area are not entirely consistent. On the one hand, you have these cases like Worf v. Zeldin and Clapper where the Supreme Court says you need to put the allegations of standing in the complaint. You need facts. And then there are other cases like Sierkiewicz and Conley v. Gibson where the Supreme Court says the federal rules of civil procedure establish a no-displeading regime. You don't even need to plead facts. If the defendant thinks he needs more factual detail to be able to defend, he should move for a more definite statement under Rule 12b. There's tension between those cases. There's Twombly and Iqbal coming along later with this new plausibility standard. The law of pleading right now is in flux, and the Supreme Court's guidance is not entirely consistent. So we did say in our opening brief at the very end in the conclusion section that the preliminary injunction should be vacated, and the case remanded with instructions to dismiss for lack of subject matter jurisdiction. And we made that request based on Worf v. Zeldin and based on Clapper where the Supreme Court dismissed the complaint, affirmed the district court's dismissal of the complaint for failing to plead adequate facts on the standing inquiry. We backed away from that in our reply brief, and we just said the preliminary injunction should be vacated because under a notice-pleading regime, normally the failure to plead sufficient facts shouldn't warrant dismissal. It should warrant a more definite statement under 12e only if you actually plead yourself out of court should that result in the case being tossed by the district court. But again, we can line up Supreme Court decisions on both sides of this issue, and it's not entirely clear where the Supreme Court would come down in a situation like this because sometimes the Supreme Court says dismiss for failing to allege sufficient facts.  Your argument is we should send it back for more findings, slash pleadings, slash statements on this topic. I mean, if what you're saying is it's sort of unclear, I mean your argument before is you can't ever establish on the establishment clause absent some imminent injury, and so you think it's at least roughly similar to equal protection, and you said nobody has pled anything imminent and nobody showed that at the preliminary injunction hearing and declarations and so forth. If you're saying, but maybe they could, then that wouldn't be here that we would do. That would send it back and go, all right, Judge Reed, here, develop a little bit more of a record on this issue standing, and then send it back to the district court. That's what it sounds like you're saying. That's not what we're asking for at all. That's not consistent with judicial economy. If that were to happen, we'd be right in front of this court again, possibly, on the merits of the establishment clause inquiry. All we're trying to say is a matter of candor. This is a jurisdictional question, and because it's jurisdictional, we have an obligation to present to the court the available options based on what the Supreme Court said, and the Supreme Court has not been entirely consistent on the question of fact pleading versus notice pleading on the issue of Article III standing. Wharf against Selden and Clapper indicate that the facts need to be pleaded in the complaint, and if they're not pleaded in the complaint, the case needs to be thrown out. That's what the court said in those cases. There are other cases, though, from the Supreme Court that take a much more forgiving standard with respect to the issue of fact pleading and say really all you need to do is put the defendant on notice. And then with these factual questions. Any of those cases allow us to go, but regardless of standing, you win or you lose. And I think that's the problem with that. I mean if you want us to say, well, you didn't prove standing at the preliminary junction date, so we're way past the preliminary junction, we remanded proceedings consistent herewith, that's at least got some logic to it. But to say, well, you didn't prove standing, but if you had, and we think this or that about establishment clause The whole point of standing, frankly, is that we want someone with a stake in it being the person to make the argument, so that we're not issuing hypothetical warrants. As interesting and fascinating as that would be, that's not what we're supposed to be doing. That's really what Article 3 stands for. It's about concrete and particular injuries, so we're sure that the plaintiff who is complaining is someone who has a stake in the outcome, and isn't just coming in and we're all just doing the law school exam. And so if we don't have that, even if we might someday, but we don't have that now, I don't understand why that doesn't end the matter. It could. Judge Haynes, it could end the matter. It's a question that's committed to this court's discretion. All we're saying, Judge Haynes, is that Steel Co. does not forbid this court to rule on whether there was a clear showing of likely success on the merits, as well as whether there was a clear showing of likely success on jurisdiction. That's all our claim is. It's a very limited claim. There are some differences recognized in the Supreme Court's own case law, and one of those is the issue of taxpayer standing. Another possible distinction is whether personal confrontation with a religious symbol. The Supreme Court has said that's enough to establish standing in the Establishment Clause context. It's hard to think of an analog that would exist in equal protection, because one does not encounter religious symbols, typically, as the basis of an equal protection claim. Those are the two main differences that I could think of. So if they put on a big board this statute and put it in front of the state capitol and said, proudly supporting the rights of religious people, and put this up on a big board, they might have standing because if they live around the block or go to the state capitol, would that be a different scenario? Under the Establishment Clause, I believe they would have standing, under Your Honor's hypothetical, because the direct and personal contact with something that is alleged to be a religious symbol sponsored by the state is enough for article free standing. And that was a hypothetical as well, and we all understand that. It's a hypothetical, and they should still lose on the merits, to be sure. But as far as the article free standing inquiry goes, if they are personally confronting a billboard sponsored by the state with what they allege to be a religious message, that's enough for standing. But personally confronting the statute book is not confrontational enough under the law as your position. No. That can't be enough for standing. If it were, everyone would have standing to challenge any law they disagree with. And that's inconsistent with many decisions of the Supreme Court, including Newdow, because Michael Newdow was not allowed to have standing to challenge the federal statute that added the phrase under God to the Pledge of Allegiance. And he couldn't say that I opened up the statute books and read the statute. That caused me offense. That wasn't enough for article free standing there. And there are many other decisions from courts of appeals in a similar vein. If we were assuming arguendo to agree with you that there was a lack of standing, and this is arguendo, would we be creating a circuit split that would be problematic? I don't think so at all. It depends on how the court writes its opinion, obviously. But the cases on which the plaintiffs have relied, such as Awad from the 10th Circuit and Catholicly from the 9th Circuit, are easily distinguishable, readily distinguishable. How do you distinguish them? Well, first, the plaintiff in Awad alleged that the Oklahoma constitutional provision would have prevented the state courts from probating his will. So that is a clear personal and concrete harm that goes well beyond offense taken over the law. In addition, the constitutional provision in Awad was specifically disparaging Sharia law and, by implication, the Muslim faith. In Catholicly, that was also the tone of the resolution that was challenged. It was a specific and direct disparagement of the Catholic leadership for their position on an issue. No such direct disparagement is being made in Mississippi's Conscience Protection Law. It singles out certain beliefs for protection, but it's not going out of its way to explicitly disparage the beliefs that are not listed in Section 2. So that's the distinction. We also think Catholicly was wrongly decided for the reasons we provided in our brief, but it's not necessary for this Court to create a service for one question. It can simply distinguish Catholicly on the grounds that I've just described. Okay. Do you want to talk at all about the merits of this? Certainly. Because it seems to me that it has, and when I say merits, to be clear, I'm not talking about whether it was a good idea or a bad idea, because that is in our business. Our business is solely whether it's constitutional or not. If we get past the standing and find that there is standing, then that's our only question. We can't get into whether this was a good idea. If it was constitutional, Mississippi can do it. If it's not constitutional, even if it's a good idea or if it's a bad idea, they can't do it. So I just want to be clear on that. I have a question about, on both establishment and equal protection, this idea that this is not discriminating against people, it's simply protecting religious beliefs. If you have somebody who goes to get a marriage license and they walk up to the counter and says, you know, I'm marrying Jane, and so we'd like our license, and the clerk goes, oh, I'm accused, and goes running down the hall and has to find out. He's going to see if there's anyone who will give you a license. To me, I'm not sure why that isn't state-sponsored discrimination. Well, that's not permitted under the statute. The statute requires – That person's accusing, and let's say they've given the proper notice or whatever. If the person – There's nothing that says they can't say why they're accusing. You can't say it, and they're real loudly like, oh, I have to refuse. There's nothing that prevents that. That's not permitted under the statute. If a clerk or any state employee is recused, the issuance of a marriage license cannot be delayed in any manner. So even under Your Honor's hypothetical, that is a delay. If the clerk is going to make a scene, run down the hall, and say I'm recused, steps must be taken to prevent that from happening under the terms of the statute. Now, if this were to happen, if what Your Honor has described were to happen for some reason, there would be Article III injuries, certainly. Encountering that type of scenario at the county courthouse is an Article III injury, and it would give the person who encountered that clerk standing to challenge the law. Now, whether it succeeds on the merits is a separate question. But what Your Honor described is not what the statute protects. Okay. Well, let's talk about Section 5, about the providing goods and services related to the solemnization or maybe celebration or recognition of any marriage. Isn't allowing people to fail to recognize a marriage that the Supreme Court has expressly held must be permitted an attempt to overrule the United States Supreme Court? No, not at all. The only Supreme Court holds is that a state is required to recognize and license marriages between the same sex. A private actor is not the state. Private actors' decisions do not implicate the 14th Amendment. There's no fundamental right. The government is not allowed to take any action relating to someone refusing to recognize a marriage, and that's getting involved in the state in declining somebody's – we're not talking about, like, I won't open my door to someone who I don't recognize, one way or the other. We're talking about the state permitting that. So why isn't that involving the state in a nonrecognition of a marriage that the U.S. Supreme Court has said has to be recognized? That theory of state action would make every act that occurs within a state borders state action because the state is either allowing it to occur or failing to prevent it from happening. And there are some laws – But you have a statute that expressly allows the state to bless that nonrecognition. Bless is an overstatement, Judge Haynes. The state is allowing it to occur without penalty or reprisal from the state. It's not a blessing. It's just the state failing to punish or discriminate or take adverse action against those people who act in a manner in accordance with their conscience. The state is not, for example, complicit in the consumption of peyote if they exempt followers of the native religion from using peyote as part of their religious ceremonies. That's not state action. This is not state action either. Is it important to the constitutionality of the statute that it contains the conscientious objector status not just for religious objection but also for sincerely held beliefs, secular sincerely held beliefs? Is that essential or important or neither here nor there? Let me answer if my time has expired. We don't believe that's outcome determinative, Judge Elrod. We think it helps our defense of the law at the margins, but it certainly would not make the law unconstitutional if it were limited to religious exemptions. For example, the peyote exemptions that are discussed in the Peyote Way Church of God case. Those exemptions were limited to people who ingested peyote explicitly for religious reasons. They were upheld by this court and properly so in our view. If this statute were hypothetically limited to religious objectors, it would be equally constitutional. All right. Thank you, Mr. Mitchell. Thank you. Can you step down for a moment? Good afternoon, Your Honors. May it please the Court. I represent the CSE plaintiffs, and my clients have brought only an Establishment Clause claim. For that reason, I'm going to be focusing on the Establishment Clause. One of my clients is Susan Rostowski, an Episcopal vicar from Hattiesburg, Mississippi. Although Reverend Rostowski couldn't be here because of the storms that have been plaguing Mississippi in the last 48 hours, I want to be perfectly clear about something at the outset. My clients acknowledge and respect that there are many different people with different but equally sincere religious beliefs about marriage in general and about marriage between same-sex couples in particular. I am not here today to tell you that such beliefs can never be accommodated under the First Amendment. In fact, my clients believe that in light of the Supreme Court's decision in Employment Division v. Smith, neutral religious exemption laws play a vital role in the preservation of religious liberty in this country. And in fact, many states throughout this nation, such as Maine or Utah, have been experimenting with religious accommodation laws pertaining to LGBT issues, with thoughtful people on both sides seeking to forge fair and constitutional compromises in good faith. But we are not here today to talk in general about the conflicts that can arise between sincerely held religious beliefs and the constitutional right recognized by the Supreme Court in Obergefell. We are here today to talk about a specific statute, HB 1523, which is completely inconsistent with our country's history and constitutional practice regarding religious liberty. Unlike any other religious accommodation statute of which we are aware, HB 1523 begins with the endorsement of three specific religious beliefs, and then, based upon those beliefs, permits what I call the kitchen sink approach, an extremely broad and open-ended range of exemptions in conduct. If there is one thing that the Establishment Clause says the government cannot do, this is it. Could I ask you about these three specific religious beliefs? Because isn't there what can happily be called a raging controversy even within denominations? The Presbyterian Church, the Episcopalian Church, the Methodist Church. There's not a raging controversy, let's say, within the Methodist Church about whether Jesus Christ is the Son of God. That's an agreed-upon tenet overall in that case. So there's a raging controversy in many denominations within the Christian Church and elsewhere in other religions and other faiths over this issue. And so how can you say it's a religious belief when even the ministers and so forth can't agree on the principle? Yes, I understand, Your Honor. I would go back to our nation's history and to what the framers were concerned about when they passed the First Amendment. In the colonial period, there also were intense debates within Christian sects, within Protestant sects, and between Protestant sects about issues back at that time about taking oaths, about having taxes to support a government church, about Native Americans. And it didn't matter whether the debate was within Methodism, for example, or between Methodists and Presbyterians. The First Amendment and the Establishment Clause covers both. What you're looking at in the Establishment Clause context, in the words of Justice O'Connor, that was adopted by the Court in Santa Fe, is what a reasonable observer, how a reasonable observer would perceive the statute or the enactment in the context in which it was passed. And there is no way that a reasonable observer in the state of Mississippi could construe this statute any other way other than the explicit endorsement of certain religious beliefs. What the statute does is it says to certain people in Mississippi, you are outsiders, you are not part of the political community, like my client, Reverend Russkowski. And it says to other people in Mississippi, you are insiders, you are the favored people. So what religion is being established by this? It's not necessarily a religion. It doesn't have to be establishment of religion. It's establishment of a religious belief. Just as creationism in the Louisiana cases, the Court said you couldn't force creationism to be taught in the schools. Creationism is associated with a whole bunch of religions. But the teaching, the forcing of the teaching of creationism was an endorsement of a religious belief. The same exact thing is true here. Creationism is saying God created the world. And that is a religious belief, regardless of which religion holds it. However, there are people who think same-sex marriage is not a good idea who hold that particular religion faith. There are people of a religious faith, like your client, the Reverend, who believe same-sex marriage is not outside of God's plan. That is correct, Your Honor, but again, what the Supreme Court test requires you to do is look at what a reasonable person would think about whether the statute is sending a message. We can get to standing, but the constitutional injury for establishment of is the government sending a message. And what message do people in Mississippi think the government was sending? A message about religious beliefs. And indeed, when you're looking at this inquiry, unlike in other contexts, there is no debate within the Supreme Court about whether legislative history is admissible. It clearly is. In fact, Justice Souter has said in McCreary that not looking at legislative history in this context would be disingenuous, because you have to look at the context of the statute. And not only can you look at it as a reasonable observer, but as a matter of fact, we know exactly how this statute was perceived in Mississippi. Your Honor this morning used the phrase Twitterverse. The Twitterverse, in response to the enactment of the statute, was all about religious beliefs against gay people and against same-sex marriage. There was no one, no one, talking about this statute being motivated by some kind of secular policy reason other than religious liberty in support of the statute. Is that something we should consider? Whenever laws protecting LGBT rights have passed, people have also, prominent people have said, we do this because we're loving. We do this, and they have cited Bible verses. But you wouldn't argue that those are religious, that because of people citing those and cited Bible verses, that that was a religious statute? Do you say, well, 20 times more Twitters said Bible verses over here versus over there? You don't need to go to that, Your Honor. You have the statute itself, which says religious belief, I think, 34 times. You have every person who supported the statute, including the governor, including the legislature, saying the purpose of the statute was to promote these religious beliefs and to protect people with these religious beliefs. Does it say it was to promote those religious beliefs, or does it say it was to protect people who pursue those beliefs? It was to protect people who pursue those religious beliefs, but there was no one, zero people saying that we are promoting the statute because of some secular policy reason, which you're not even hearing from the other side, other than the protection of these religious beliefs. Does it matter that the statute itself contains the secular exception? The answer is it can, but the officer also, in Establishment Clause terminology, the phrase that's used is sham. And if the court concludes that the words moral conviction in the statute are a sham, just as it concluded in Wallace v. Jeffrey, because Wallace v. Jeffrey, they already had a moment of silence statute for the school system, and then they passed another statute. The court concludes, just as here, you have a Mississippi riffraff. A, you have a Mississippi riffraff. B, you have the lawyers on the other side saying the statute doesn't do anything. I'm happy to answer the questions about what the statute actually does, but if they're right and the statute doesn't do anything, then all it does is send a message about three specific religious beliefs. We've never had a statute that has ever done this in our constitutional history. The Utah statute doesn't do it. The Maine statute doesn't do it. The supporters of the First Amendment Defense Act, even they admit it's unconstitutional because they've removed this non-neutrality language from their bill. Well, let's get back, then, to the standing inquiry that we've already spent a lot of time on. So tell us what there is in your pleadings that establishes concrete injury in fact. So I think the answer on establishment clause standing is, again, and Judge Higginson explained this very well last Friday, is you have to look at the nature of the injury. For equal protection, the nature of the injury is unequal treatment. For an establishment clause violation, the constitutional injury is when the government speaks, it sends a message to certain people, certain religious people or non-religious people, that they are outsiders, and to other religious people that they are insiders. And the Supreme Court has been very clear that it's the injury that causes the problem.  So you have basically two kinds of, again, part of the problem is no one has passed the statute like this before, but you have two kinds of establishment clause endorsement cases. You have the display cases, where someone looks at a, your case in Murray is the perfect example, sees a small cross in the city of Austin seal on a police car or something like that, and that's enough to establish standing. Or you have the school prayer cases. And the school prayer cases are crucial in this regard, because we look to see whether any plaintiff had been held to have standing in a school prayer case before there was ever a school prayer. And what's the answer? Yes. In the Santa Fe case, the Supreme Court, in response to the argument that it was an improper facial challenge, had this to say. They said, the mere passage by the district of a policy that has the purpose and perception of government establishment of a religion is enough to create a facial challenge. It's exactly the same as the standing argument being made here. And they further went on to say, not only is the simple enactment of this policy with the purpose and perception of school endorsement enough, but, and I'm going to read this specifically, we need not wait for the inevitable to confirm and magnify the constitutional injury. So exactly what my friend on the other side was saying, that you have to wait until there's some kind of concrete establishment cause injury, the Supreme Court said exactly the opposite. My clients have been hurt enough. They have testified in court that a message has been conveyed to them that they are outsiders in their own home state. And unlike Valley Forge, they don't have to travel anymore. They're not roaming in search of a constitutional violation. The constitutional violation came to their own homes in backyard. Is any conscience protection statute something that would prefer a particular conscience over another? So are passivists preferred over the people who enlisted in the Army? Are peyote users in a Native American state, a Native American state, preferred over people whose faith does not involve using peyote, et cetera? I mean, there's a lot of conscience protection statutes out there. Could you make that same argument on all of them? No. So let me explain why. So there are two kinds of really conscience-based or pre-exercise-based addressing statutes. There's ones that Judge Elrow wrote about in the Santeria case, where there are narrow exemptions that tend to deal almost exclusively with matters of ceremonial religious practice. In New York, we have issues with Orthodox Jews, and there are a number of statutes or cases that allow Orthodox Jews to follow their practices if it's not a violation. Why? Because it's not sending the message. The Santeria practices are good. A government permitting Santeria practices is not sending a message to anyone that Santeria is the preferred religious belief in Texas or Mississippi or Louisiana. Why is that? Is that just because it's small? It's because of the context, the context of the statute, the context of the society, all these things which the Supreme Court has said you are to look at in this context. But could one argue that in this changing culture, that the number of people who have an Orthodox view of biblical prohibitions in the Book of Romans or something, I'm trying to make a hypothetical, that those are becoming a smaller and smaller group of people, and in fact, you can't get one of the good law firms that file all these amicus briefs are not filing briefs for them. So maybe in the context, they're a small group, too, like the Santerians, because people are afraid to say those things in public. Is that possible? Your Honor, that may be true with respect to another statute, but with all due respect, not true for the State of Mississippi. Just not true for the State of Mississippi based on the legislative record. The statements of the governor that he would be crucified to support this statute. So if this was in Austin or New York, then this argument wouldn't work? Let me go to the second thing, because I think that's what it deals with. There are, I said at the outset, there can be religious accommodation statutes relating to people's views about LGBT marriage equality that are constitutional. I'm not saying that that's impossible. The problem is this statute. How would this be changed in your view? What would make this the context here, I think, if we're going to understand the argument the State is making? Is there a concern that people whose faith says one man, one woman, are going to be forced into supporting a thing that is not something they can afford to do? That's what the State is arguing is the purpose of this, among other things. But we'll just focus on the wedding because that seems like the easier hypothetical, if you will. If you accept that protecting the conscience of people is something that can be done by the State, how could they do that constitutionally? So there are two things that are obvious constitutional violations with this statute. The first one, I think, takes care of the case. You don't need to go beyond it. The first one is the non-neutrality. The Supreme Court has said countless times, dozens of times, that neutrality is the underlying principle of both the free exercise and the establishment clause of the First Amendment. This statute cannot be read by anyone as a neutral statute as to religious beliefs. If Section A and Section 2, instead of saying that marriage is or should be recognized as meaning one man, one woman, that is the belief about whether marriage is or should be recognized. In other words, somebody has a belief one way or the other. The Utah Compromise, for example, which has not been challenged, says religious views about marriage, sexuality, and gender, I think, is the language. So it's neutral. You can have a religious view on one side or a religious view on the other. And it certainly solves the neutrality problem. But if you passed the statute like that, would that then allow the clerk not to issue the license, the judge not to perform the wedding, the cake baker not to bake the cake? So let me go to the next problem with the statute. It has this kitchen sink approach. So some subsections of the statute, if you solve the neutrality problem, could potentially be constitutional. On the clerk issue, my clients first sought discovery before they did anything else about what kinds of bells and suspenders were going to be put in place by the state of Mississippi. Because the statute just says impediment and delay. To make sure that the hypothetical that you postulated, Judge Haynes, would never happen, it's not fair to have to say to a gay couple, close your eyes, cross your fingers, say a prayer, and hope it doesn't happen to you. You can't put a couple at that risk. We wanted to make sure that it wouldn't happen. And it's at least possible that if those bells and suspenders were in place, that could be constitutional. The problem with this statute is it goes far beyond that. And that's where it distinguishes it from the abortion context. In the abortion religious exemption statutes, you know going in, the legislature knew going in exactly what someone could or could not do in connection with the procedure of performing an abortion. People have very strong religious beliefs about that. They believe it to be murder. That's understandable. It's a huge imposition on religious exercise. And you know exactly what someone can or can't do. With this statute, with the kind of kitchen sink approach to the subsections, throwing a whole bunch of different stuff in, there are certain sections, and you've kind of alluded to this, where it is impossible to know, sitting here today, how it could arise, what people could do, whether a clerk could yell at someone like that. I don't think that's disposed of in the statute at all. Whether a public school teacher could make similar comments to a class of seven-year-old kids in a public school and not be disciplined or be removed from the class as a result, all of that is permissible. And if you have that kind of a broad risk-free type statute, a broad-based religious exemption statute, that's where you need to have the balancing. That's where you need to look at the three-party harm. Excuse me, Judge. You referenced the Moore case from last week. Yes. And I understand that that's an equal protection, not a First Amendment challenge. But you used the phrase earlier, sends a message. Why does sends a message work for equal protection but not for establishment of free exercise? Well, the opposite. It works for establishment and not equal protection. I mean, the nature of the injury for establishment clause is the government sending an official message. And let me talk about that for a second. I'm not going to ---- Are you saying that the Moore case is not about sending a message or ---- Well, but the injury for equal protection is some kind of governmental enforced unequal treatment. So you have to look at what the constitutional provision guards against or protects against. For establishment clause, it's sending a message by the government. And for equal protection, it's treating people differently without either a rational basis or depending upon the level of scrutiny. Now, with respect to this issue about the question you asked, Judge Alright, about the big banner on the Mississippi State Capitol that just had the statute in it, I can't imagine how the government can send a more clear message about religious preferences with respect to these issues than by passing this kind of a statute. That is how the government sends messages. The fact of the matter is I can't give you a case that doesn't because no case, no government has ever tried to pass this kind of statute in the past. But if in the school context the plaintiff had standing to challenge the school prayer in Santa Fe before the prayer was ever said, my plaintiff ---- But if the prayer was going to be said where the person had to be, I mean, that seems to be the link with ---- I don't have children in school, and so if there was a ---- in my home town, if there was a law passed about prayer in the school, I don't think I would have standing, whether I agree with it or not. I don't think I would have standing because nobody in my ---- I'm not going to be having to listen to a prayer and neither is anybody I'm related to. So why does that prove anything here? Two things. The critically unconstitutional provision in HB 1523 is Section 2. The rest of the statute flows from it. It begins with those religious beliefs. That's the government sending the message. And again, my religious ---- it's kind of funny. My religious tradition teaches that you can hurt someone with words, frankly, a lot more than you can with pictures. And the words in Section 2 have caused stigmatic injury to my clients. They testify that it has, and as the Supreme Court said in Santa Fe, you don't have to wait for more stigmatic injury. That's enough for establishment-caused standing. Let me ask you on the procedural discussion that we had with counsel officers, if we were to conclude against your argument that you had not established standing, maybe someday there is somebody who would be denied a service who would have standing, we're not saying ever and a day, but at the current posture there's not, what procedurally should happen if we were to conclude contrary to your argument that none of the plaintiffs have standing on any of the claims? What are we supposed to do? So in my normal practice, I practice commercial law, and so I deal with the rules of civil procedure all the time. And I'm familiar with these kinds of government, the difficulties between the Supreme Court, what they said in Iqbal and Twombly, and what they said in Connolly, and what they said in Worthy Selden. And I agree with my friend sitting to my left that there is confusion in the case law. But I think the answer on a preliminary injunction is pretty well established, is if you conclude that there's no standing, A, you don't reach the merits that I think you've already talked about, and B, you would send it back, particularly if you think that there was a problem with the pleadings. You would send it back to allow the plaintiffs to further develop the record as to the pleadings. Again, I don't think you would need to allege that kind of standing, that kind of injury that's already happened. For the establishment clause, I should also say that Bowen v. Kendrick, the Supreme Court says again that facial challenges in the establishment clause context are the norm, and that the Court has frequently permitted there to be standing in a facial challenge before the whatever the issue was, the prayer, slow prayer, or whatever it was that went into effect. But Mr. Mitchell, if I heard him correctly, didn't talk about going back to amend pleadings. I had asked him a couple of questions about that. He says it goes back for discovery. Tell us how that would work, if it worked, and what discovery. Do you think after discovery your pleadings would be properly amended to be more specific? Under Rule 8, the notice of pleading? Yeah, we certainly would do our best. I'll give you an example, Your Honor. You must have facts that you know about or that you suspect that you could establish through further discovery. Otherwise, you could not have in good faith brought the case. So tell us how that would develop if we followed Mr. Mitchell's scenario. So, for example, this was a preliminary injunction hearing, and it was done, as Your Honors probably know, on a very expedited schedule. And we put on testimony from one of the witnesses who lived in Mississippi that she had, a good friend of hers had a daughter who was seven years old who went to the public schools. And in this daughter's class, the second grade or first grade teacher went around and said to each kid, who are your parents and are they married? This little girl raised her hand and said, yes, I have two moms and they're married. The teacher then said, no, they're not. Your parents are not married. And then polled the rest of the students to show this girl that all their other male and female parents were properly married in contrast to hers. Would we add parties like that as plaintiffs to this action? That was not objected to on hearsay grounds, by the way. Would we add parties like that if the Court were to rule as we most assuredly would? And that happened. Here's the difference between the statute. What happened in that story is the teacher was reassigned from this girl's class. If that happened under HB 1523, that teacher could not be reassigned. If she were reassigned, she would have a suit against the State of Mississippi for an injunction and potentially monetary damages. Your Honors, I implore you. Do not put that seven-year-old child at the risk of that kind of indignity. The Supreme Court precedents say you do not need that kind of harm for the Establishment Clause. The harm is the sending of the message. Stigmatic injury is paradigmatic injury in the context of the Establishment Clause. And again, I'm not saying that's true for any other part of the Constitution. Kagan. Sotomayor, is Santa Fe your strongest case? What is your strongest case? Santa Fe is the strongest case, but Bowen also cites a number of other cases that have said similar things. Again, I don't have a statute that I can cite that has sent this kind of stigmatic injury to people in a state the way this statute has. It's never been tried before. Ms. Kaplan, on the existing record, do you agree or concede that stigma is what you have on the existing record? I'm not going to go – I'm not going to find buried in somebody's testimony something beyond the stigma. And I'm not saying that that's not good enough. I'm just saying that is what you stand on here today. Two other kinds of testimony in addition to that, Your Honor, if that helps. One, there was testimony that merely – and this goes to how things were perceived in Mississippi. Merely upon the enactment of the statute, gay men in the north of Mississippi – I believe it's the Delta. I'm not 100 percent sure, but I'm pretty certain it's the Delta – gay men in the Delta had stopped – had been afraid to go out for dinner together in public because they were afraid that they would be confronted or kicked out of restaurants, et cetera, and humiliated merely upon the enactment of the statute. In addition, my client, who's a CSC member, Josie Pritchett, testified. She had been a plaintiff in the marriage case. She had run for office in Mississippi. She lived her whole entire life in Mississippi. She had two kids. And she testified that she and her wife moved from Mississippi, despite all their family and connections there and their love of Mississippi, to Tallahassee – to Tampa, Florida – excuse me – because the passage of HB 1523 sent a message to her that she could not raise her children in the state of Mississippi without putting them to the harm of this kind of stigmatic and other injuries. But how do you deal with the regressibility problem, then? If the statute would still be there, even if we agree with you? If this court issues an order – just as happened, frankly, with the same-sex adoption case in Mississippi – if this court issues an order that HB 1523 constitutes an improper endorsement of religious beliefs in stark violation – I would say radical violation – of the neutrality principles that underlie these provisions, that will cure the stigma. That will cure the injury. Because just like the Twitter universe that you talked about before, Judge Haynes, I can tell you that instantaneously, every gay person – indeed, every non-gay person – in Mississippi will know of that ruin. All right. Thank you, Ms. Kaplan. Mr. McDuff? Good afternoon, Your Honor, and may it please the Court. My clients raised both the Establishment Clause and Equal Protection Clause claims, and I just want to add a couple of things regarding the Establishment Clause issue and the move to equal protection. The Establishment Clause says Congress shall make no law respecting an establishment of religion. Of course, that now applies to State governments as well. And, Judge Smith, you asked a hypothetical about what if the Mississippi legislature passed a law establishing a religion, specifically the Southern Baptist religion. And counsel for the governor said that by itself would not give standing to those who disagreed with that law. And then in response to Judge Elrod's question, he said, well, maybe if there was a big board in front of the Capitol, that would be enough to establish standing if a person actually saw the board. And surely, with respect to the First Amendment, standing doesn't turn on whether there's a big board you read the law on or a piece of paper or a computer. A federal court can declare such a law unconstitutional, and it can enjoin its implementation so that it is not effective as law. Even if there's nothing else to be done under the statute other than simply the passage of it respecting an establishment of religion. And I think... What case says that? I'm sorry? What case says that, counsel? I don't know that there's any case that says that because this is a unique statute just as a statute being passed that said Southern Baptism or the Southern Baptist religion is the official religion in Mississippi. I think... Of course, Mr. Mitchell says, well, you take action against a statute like that by enjoining a state officer, but that by the mere existence of the words in a one-sentence statute, there's nothing to enjoin and there's no injury in fact or no redressability because there's no action to take. Well, with every statute as with this one, there's going to be an implementation date. Maybe it's immediate. Maybe it's a month later. A court, a federal court can enjoin implementation of that statute even if it doesn't command any officer to do anything. That means it is no longer effective as law. And so that the citizens of Mississippi going forward know there's not a law saying that Southern Baptist religion is their official religion. So what is the concrete and particularized injury that somebody in the state has such a statute? It is the stigma of having their state... Stigmatic, I mean, that's the kind of... Sure. That's what you all... What you have is that by endorsing, establishing a religion, there is a stigma to people that are not adherents of that religion. That's right. By the endorsement... Exactly. Exactly. If the law is Southern Baptist, then that's the stigma that you feel that your religion has been singled out or not become part of the in crowd, if you will. Precisely. That's the argument. Precisely. That's an ethical understanding. And who says that? What state says that? Well, I think Ms. Kaplan correctly cited the Santa Fe case. Okay. They said the passage is the unconstitutional act. Now, granted... But the Santa Fe case, didn't they already have... I thought they had the statement and the principal had seen it. Maybe I'm confusing it with one of the other prayer cases out of that circumstance. Well, that's the case that involved prayers at the high school football game. At the football game, right. But I thought that there was already... Right. They were going to the school... The students were going to the school administrators and similar to like at the graduation cases... Exactly. It was a football prayer. And when the violation of the establishment clause is a prayer or is a placard or is a cross or is the teaching of a course on creationism, the courts have held that yes, there has to be a physical encounter with it. But here, when you're just talking about a statute that establishes a religion and there's not any further physical manifestation of it, it surely is enough of an encounter to read the statute. Did you say that you were still advancing your equal protection claim? Yes. How is that the case after the Moore case? Because unlike the Moore case... Because it pretty much says, doesn't it, that stigma is not... Stigma by... Doesn't work. Stigma by itself doesn't work. But stigma flowing from unequal treatment clearly does. But what unequal treatment do you have so far? I'm not saying you couldn't have unequal treatment, but what in this record says that there has been unequal treatment by the governmental entity in the specific circumstance? The unequal treatment is, to quote the 14th Amendment, the unequal protection of the laws. The 14th Amendment says no state shall deny any person within its jurisdiction the equal protection of the laws. And unlike the Moore case, which involved a flag, and unlike Allen v. Wright, which involved a tax exemption for segregated private schools that also was granted to integrated schools, this statute specifically provides for unequal treatment and the unequal protection of the laws, specifically. But then wouldn't it seem that you could find someone that would be able to... For example, Mr. Taylor. He did not say, as I understand it, that he was expecting to get married in Mississippi and feared going to order the cake or the wedding hall or whatever, or the judges refused to perform the service or whatever. And so wouldn't it seem like you could find someone and should find someone that is an imminent harm, if you will, of encountering such discrimination as you envisioned this law would permit? But that's not necessary for this reason. The statute sets out protections for the people who are adherents to these specific beliefs that are not provided to people who are non-adherents. And more importantly... Yeah, but that seems to be your exception. I'm talking about on the equal protection. Yes. The concern here, it seems to me, is the whole intersection of free exercise and public accommodation. And this came up a lot, and I don't think I don't want to make the analogy, but this came up a lot during the Civil Rights era where people didn't want to accommodate somebody and they claimed a religious convention, and that didn't end up working too well. And so that's the argument. But as I understand it, in those situations, there were people going to a lunch counter and not being served. I mean, there wasn't an imagined potential problem. There was a problem. Right. And that was dealt with by saying you can have whatever beliefs you want to have, but you can't transmit those beliefs into a denial of public accommodation. And that was how that whole line of situations transpired. So as we come here, wouldn't it seem that Mr. Taylor, he's about to get married in Mississippi, could have told us that and could have said, look, I don't know what contract rights I have if I sign up for the case, basically, because they can at the last minute decide they're not going to make the case and I don't have any remedy because it would violate 1523 to sue this person. Well, he is getting married in Mississippi, and reading the pleadings as most favorably to the plaintiff, he is in Mississippi and he said he was going to get married. I think it's pretty easy to establish he's going to get married in Mississippi. But the more important – I mean, the fact that he got married in Florida, so I don't know that the fact that he's getting married means you're getting married in the State you live in. But he is at any rate. The point, Judge Haynes, is that the danger is there just from the fact of the statute. The fact that a – you said maybe he should say that he's worried that a cake maker is going to back out on the contract. That possibility exists simply because of the statute itself. But did you allege discriminatory treatment in the pleading? And if so, where is that in your pleading? We allege that the statute provides unequal protection of the laws and unequal treatment in that sense. But you don't allege any specific discriminatory treatment? We don't allege that a specific person is about to be denied a cake or a flower. In Judge Hickinson's case, it says, Allen held that when plaintiffs ground their equal protection injuries in stigmatic harm, they only have standing if they also allege discriminatory treatment. And then it goes on – they're trying to distinguish Allen in this context. They do first the argument that, well, just the State blessing this in some way in the Confederate flag and that that's enough. And then they reject that argument, and then they go through the Allen argument. So is your pleading lacking? No, I don't think so, because I think here the unequal treatment is the unequal protection of the law, and the law specifically provides protection to the believers to allow them to discriminate against the people in these particular groups without any consequence from the State whatsoever. Your court counsel said, you know, let's just focus on Section 2A and put 2B and 2C aside for a moment. If 2A were amended to say views on marriage or views on whether marriage is or should be recognized as meaning one man or another, so that would encompass somebody whose religious faith says it is appropriate and it is proper to have same-sex marriage. All right. In that case, you still could have – Mr. Taylor could still suffer the exact same deprivation of a cake or a wedding hall or whatever, and yet you would agree that 2A would then be neutral. It would be neutral if it covered all religious objections to marriages, whether it's same-sex, whether it's interfaith, whether it's divorced people. And Mr. Taylor could still have the exact same problem, even though it would now be neutral, in that he encounters a cake baker, a florist, whatever, a photographer, who refuses to perform services for his wedding because of his belief. Sure, but that would not be the result of a statute that provides unequal protection of the laws by designating same-sex couples as the people against whom the believers can discriminate without any fear of consequence or mistake. Instead, the statute would apply to all people who have religious objections to marriages. There may be another problem with it, but it's not an equal protection problem with that statute. Does it also discriminate against non-same-sex couples, opposite-sex couples who participate in sexual activity? Oh, it does. The unmarried – So does that – Unmarried people who engage in sexual intimacy are also one of the targeted groups in the statute. And so, you know, that's why we have clients who are – we have one client who is an unmarried person engaged in sexual intimacy. But here's the – I want to read to you from the decision. It's quoted in our brief in the Northeast Florida contractor's case. It says, when the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The injury, in fact, in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit. And the benefit – But in that case, wasn't there an important factual distinction that there were just a limited number of available contracts, so it was a lot easier to see concrete injury? Whereas here, the number of potential plaintiffs in the same circumstance as your clients is almost limitless. Well, the facts were different, but here's the key point. The benefit that the lesbian and gay and transgender plaintiffs and the unmarried plaintiffs engaged in sexual intimacy, the benefit they seek is to be free of discrimination, to avoid discrimination. And this statute, by authorizing discrimination specifically against them, but discrimination based on religious beliefs that would condemn them as being sinful, but not against religious beliefs that involve other types of marriages, that is a structural obstacle that denies them the benefit that they seek. Let me ask you. Let's simplify this for just a moment and only ask you about these cases that are going across the country where somebody said, look, when I make a flower arrangement, when I make a certain decoration on a case that this is artistic conduct, and that those people are then declining to do artistic, this is their position, I'm not agreeing or disagreeing, their position is they're declining to create art that supports something they don't agree with. And those people have been told you can either shut down your business or you can provide the case and so forth that you don't agree with. What is your answer to that line of thinking? Well, I think the answer is the one that the Mississippi legislature adopted in 2004, which is the Religious Freedom Restoration Act, where any time someone who has a sincerely held religious belief regarding something like a marriage or anything else can object to any action of the government, for example, if they were to be brought to court because they didn't provide a case, and unless there was a compelling interest in forcing them to act contrary to that belief and it was the least restrictive means of doing so, then the person's religious objection would be upheld. And again, the thing about the 2014 Religious Freedom Restoration Act in Mississippi, like the others throughout the states, is it does not discriminate on the basis of same-sex relationships or transgender or anything. It applies to all religious beliefs, and that's the problem with this particular statute, and that's why it is an unequal protection of the laws, because it allows same-sex couples to be targeted in a way that no other couples are, and it allows transgender people to be targeted. And unmarried sexually active. Exactly. So does it target everybody? No. I mean, is that correct? No, it targets those three groups. And the adding of the latter group does not detract from the fact that it targets the others. And so the stigma in an equal protection clause has to flow from unequal treatment, or again, to use the words of the 14th Amendment, unequal protection of the laws. And by singling out the same-sex couples as well as the other groups, the state of Mississippi is treating them as unequal. I thought there was a statistic somewhere, and I may be wrong, that the people in Section 2B is like 90% or something of all heterosexual couples. If that's the case, then everybody essentially is being stigmatized, and only a very small percentage of people in Mississippi fit in the AED group. And so in that case, does that change the analysis at all? No. I don't know. No. Well, it still stigmatizes same-sex couples because it— Yeah, but the important purposes, the important analysis for purposes of the same-sex plaintiffs is that they are stigmatized. They are the ones who—they are the only ones who under this statute can be discriminated against without any fear of consequence from the state. And that—and I'm going to quote from the Windsor case— that sends a message that their marriages are less worthy than the marriages of others. So I get that, and I fully understand that, but I'm saying if you're also stigmatizing people who engaged in sexual relations before they were married, and you're also stigmatizing the transgender group as well, you haven't left a lot of people is what I'm saying. Does that make any difference to the analysis at all? If a majority of people in the state are stigmatized or a minority of people in the state are stigmatized, does that make any difference to the analysis? No, because the question for equal protection purposes is how does each—how is each group of plaintiffs treated? And the same-sex couples are treated under the law very different than opposite-sex couples, couples who are divorced, couples who are interfaith. And whatever you think about the unmarried sexual intimacy, and whether that's constitutional or unconstitutional, it's pretty clear that the portion of the statute giving less protection, or giving no protection to same-sex couples, giving extra protection to those who would contend them as sinful and discriminate against them, does violate the equal protection of the laws. It is unequal treatment, and the stigma flows from it that declares— that sends the message that their marriages are less worthy than other marriages. Oh, I'm sorry. I thought I saw the red light go off. Let me go— You don't have to use all your time, but you— I have one more point I want to—actually, two more points I want to make very briefly. Okay. And the first is, Judge Smith, in your opinion on remand after Obergefell in the same-sex marriage case in Mississippi, you talk there about the Fourteenth Amendment iteration of Obergefell, and you quoted from the Supreme Court's opinion, where the Court said that same-sex marriages— quote, on the same terms and conditions as opposite-sex couples, end quote. And the Court in Obergefell also said that same-sex couples are entitled to, quote, equal dignity in the eyes of the law, end quote. And this statute, by announcing that people can discriminate against same-sex couples, but not against—without consequence in the state, but not against opposite-sex couples, puts them on different terms than—puts same-sex couples on different terms, and it does deny them equal dignity in the eyes of the law. And the law itself encompasses that unequal treatment and encompasses that unequal protection, and there's no need to show any further injury, no need to allow the law to take effect, because the injury is clear and the resulting stigma is clear. Thank you. Thank you, Mr. McDuff. Mr. Mitchell, you've saved time for a couple. Mr. Mitchell, Mr. McDuff, in his brief for the barber plaintiffs, accurately referred us to the amicus brief by the state of Texas and others that referred to a, quote, actual threat, close quote, of a situation arising in which a business owner denies services to a same-sex couple. Obviously, you're not bound by anything that amicus say in the—in what they filed in this court, but let me ask you whether you agree with the characterization that there is an actual threat. I'm, of course, thinking of the standing issue when I bring that to your attention. I'm sorry, to understand your question, an actual threat to the potential customers of people who— The actual threat of a situation arising in which a business owner denies services to a same-sex couple. I'm just reading from page 30 of Mr. McDuff's brief, and, of course, I went back to the amicus brief, and he did correctly quote those words, that there is here an actual threat. And I'm asking whether that's sufficient to confer standing, or at least a colorable argument that that would confer standing. If it is an actual threat, you may tell us that it's not and that the state of Texas was inaccurate in phrasing it that way. I need to see the full context of the statement in the brief. I'm sorry. From what I recall, Texas was trying to argue that there is an actual threat to the owners of those businesses, a threat of government reprisal or persecution for them acting in accordance with their conscience and declining to participate in conduct that they regard as either sacrilegious or immoral. That was my understanding of the Texas amicus. It was telling anecdotes of individual entrepreneurs who faced reprisals. The threat was to them, not to them. But that still suggests that there is an actual threat of an incident occurring in which someone wishes to deny services. Absolutely. There is a possibility of that, but that's not enough for standing. It's not enough for them to show there's a threat that it might happen to someone. They have to show that that someone is one of these plaintiffs. I thought a lot of standing cases refer to the concept of actual threat perhaps not using those exact words as being enough, as being more than just theorizing that something might possibly happen in the future. There needs to be a substantial risk or a certainly impending injury to one of these actual plaintiffs in this case. The fact that it might happen somewhere in the United States to some person is not enough. And, Judge Smith, even if there were an actual threat, they still need to show that that threat would be caused by this statute. And they can't make that showing because this conduct was legal. It was legal in Mississippi before House Bill 1523, except possibly in Jackson, depending. The hard part to me about your mirror among other things, this case is very difficult in general, but a hard part of your argument is that typically in the intersection of somebody's personal beliefs and public accommodation laws, public accommodation laws tend to win because people need to be able to go to the grocery store and shop for something and not be told because of X, some immutable characteristic, you're not allowed to shop here. That's basically what public accommodation laws are about. People can believe what they want. People can conduct their personal lives and allow them to their homes where they want. But when we talk about public, when you open a business to the public, then you have to serve the public. And you can say no shirt, no shoes, no service, but you can't say color of skin, religion, ethnicity, etc. is a reason why we won't return you. So here Jackson has said, has added sexual orientation to that list, and why is this then an intersection of beliefs with public accommodation where public accommodation has won those battles, it seems to me? In this case, the state law would trump the local ordinance. So it's just a simple question of supremacy of state law over local law in terms of what actually would happen under the terms of House Bill 1523. Now without House Bill 1523, if you read the Jackson Ordinance, and it's not entirely clear how far it extends. Would RFRA beat the Jackson Ordinance for this statute? That's not entirely clear. It's unclear. We don't yet have a case that says whether Mississippi RFRA beats the Jackson Ordinance. No, I have not found one. And it would depend on how the Mississippi State Judiciary chooses to interpret the vague and amorphous compelling state interest override. And one needs only to look at Justice Ginsburg's dissent in Hobby Lobby to see that there are a contingent of judges out there who are inclined to give the compelling interest standard a very broad reading when it comes to religious rights asserted by people such as the ones that House Bill 1523 is trying to protect. So no one can know for sure. I'm sorry. Judges have to follow a code of ethics that says they should not discriminate against people based on X, Y, Z, and sexual orientation. What happens to them in Mississippi? Are they required to follow those ethics rules? Or if 1523 does deserve respect, can they refuse to address people who fall in this category? The only thing a judge could claim protection for, possibly under 1523, is choosing not to perform or officiate at a state situation. What about the recognition? Can they refuse to perform a divorce? No, that's not what the statute says. No. The statute does not protect them. No. Under their duties as a state judge, they must follow the law. And 1523 does not in any way change that. They have no obligation — they are not in any way allowed. This statute has been mischaracterized so many times, both during the arguments today. I mean, for example, Ms. Kaplan suggested that that first-grade teacher who called out a student for having same-sex parents would be protected from discipline by the statute. That is not what the statute says. Look at Section 3. Because schools are allowed to have viewpoint-neutral policies that allow school officials to discipline teachers for inappropriate conduct like that. No. Not necessarily, because the school could just say, teachers are not supposed to opine one way or the other on homosexuality in the classroom, and then the school's policy is perfectly consistent with the statute. The other hypothetical that Ms. Kaplan mentioned is the issue of restaurants serving people at dinner. That is not a marriage-related service under Section 3.5. Opening up a restaurant — If it's a rehearsal dinner. If it's a rehearsal dinner? That is a — is a rehearsal dinner being hosted at a restaurant? Right. I mean, you have a rehearsal dinner for your wedding, and it happens to be a wedding with two women or two men, and then they say, well, we don't want to serve you because you're getting married and we don't agree with that. What do you do with that? It's going to be a context-dependent matter. What do they do? A wedding is a mess. It's a lot more clear than the RFRA standard, which is entirely indeterminate when it comes to balancing compelling interests. This statute clarifies. It provides clarity for what will and what will not trump — When you open a public accommodation, you can't reverse the Supreme Court's decision that same-sex marriage is lawful. It's not reversing the decision. You should recognize that. The Supreme Court made that determination, that you can't reverse that in a public accommodation context. The Supreme Court's decision in Obergefell applies to the state, and it applies to the state actors. It imposes no obligation at all on the private sector. Private individuals are still permitted to hold their views about the institution of marriage, and Obergefell says as much. This statute is in no way undermining what the Supreme Court said, because the Supreme Court's decision and the text of the 14th Amendment itself is limited to state action. A restaurant that opens its doors for dinner cannot turn away any patron who walks in the door wanting to be served for dinner on the same terms as anyone else. That is not a marriage-related service. That's serving dinner to the general public. It has nothing to do with marriage. It's not implicated by Section 3.5. And in all events, courts are required by the Supreme Court precedent to defer to the state's reasonable construction of the statute that is charged with administering. If your construction isn't binding on the judge, so if Mr. Taylor is refused his rehearsal dinner at XYZ restaurant because that restaurant owner doesn't want to bless or be participant in any way in a same-sex marriage, then when there's a lawsuit between Mr. Taylor and that restaurant, then the judge has to decide. The judge is bound by what you told me here today. But if the judge interprets 1523 any differently from what I said, he is misinterpreting the statute flagrantly. And if he's not reversed on appeal, he should be impeached. It's not what the statute says. We're emphatic about that. It does not protect restaurant owners. Well, you're not really saying that if the judge interprets something incorrectly in a lawsuit that we should impeach them. Not you. The state legislature. What this law does is protect people from being compelled to participate in or lend direct assistance to conduct that violates their conscientious beliefs. It is not a license to discriminate against patrons who come into your store based on their identity or based on their behavior. It is a conscience protection law. It is not a license to discriminate. There are 14 seconds left. If the court has any further questions, I'd be happy to answer them. Otherwise, we respectfully ask the court to vacate the preliminary injunction and remand. Thank you. Your case is under submission and the court is in recess until 8 p.m.